JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIE BRAHAM, | CASE NUMBER |
| | 2:15-cv-8422-MWF (GJSx) |
| PLAINTIFF(S) | |
| v. | |
| SONY/ATV MUSIC PUBLISHING et al., | **ORDER RE REQUEST TO PROCEED**<br>*IN FORMA PAUPERIS* |
| DEFENDANT(S) | |

IT IS ORDERED that the Request to Proceed *In Forma Pauperis* is hereby GRANTED.

_____          _____
Date                                                   United States Magistrate Judge

---

**IT IS RECOMMENDED** that the Request to Proceed *In Forma Pauperis* be **DENIED** for the following reason(s):

- [ ] Inadequate showing of indigency
- [ ] Legally and/or factually patently frivolous
- [x] Other:  Fails to state a claim under Fed. Rs. Civ. P. 8 & 12(b)(6) and 28 U.S.C. sec. 1915(e)(2)(B)(ii)

- [ ] District Court lacks jurisdiction
- [ ] Immunity as to _____

Comments:
See attachment.

_November 10, 2015_          _____
Date                                                   United States Magistrate Judge

---

IT IS ORDERED that the Request to Proceed *In Forma Pauperis* is hereby:

- [ ] GRANTED
- [x] DENIED (see comments above).  IT IS FURTHER ORDERED that this case is hereby:

- [x] DISMISSED.
- [ ] REMANDED.

_November 10, 2015_          _____
Date                                                   United States District Judge

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10

11   JESSIE BRAHAM,                          Case No. 2:15-cv-8422-MWF (GJSx)
              Plaintiff
12
          v.                                 **MEMORANDUM SUPPORTING**
13                                           **RECOMMENDATION OF**
     SONY/ATV MUSIC PUBLISHING,              **DENIAL OF APPLICATION TO**
14   TAYLOR SWIFT, MAX MARTIN,               **PROCEED IN FORMA**
     SHELLBACK, and BIG MACHINE,             **PAUPERIS**
15            Defendants.
16

17                              **INTRODUCTION**

18        On October 28, 2015, Plaintiff Jesse Braham[1], proceeding *pro se* (*i.e.*, without a

19   lawyer), filed a complaint alleging that Sony/ATV Music Publishing ("Sony/ATV"),

20   Taylor Swift, Max Martin, Shellback, and Big Machine infringed a copyright

21   covering his song "Haters Gone Hate" by producing Taylor Swift's incredibly

22   popular song "Shake It Off."  [Dkt. 1 ("Complaint") at 1.]  Accompanying the

23   Complaint was a request to proceed without paying the court filing fee, *i.e. in forma*

24

25   _____

26   [1] Braham listed himself as doing business as Smiggereen of a Smaggereen Music.
     For ease of reference, this order will refer to him solely as Braham.  [*See, e.g.*, Dkt.
27   1at caption.]
28

*pauperis* (IFP).  [Dkt. 2.]  Having screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court recommends that IFP status be denied and that Braham be given the opportunity to file a new IFP application with a new complaint that corrects the deficiencies identified below, if possible.

## ALLEGATIONS OF THE COMPLAINT

According to the Complaint, "Taylor Swift, Max Martin, and Shellback use a 22 word phrase from [Braham's] song entitled Haters gone hate."  [Compl. at 4.] Without identifying the specific phrase, Braham alleges that "92% of the lyrics" of "Shake It Off" come from his song, that his "song phrase string is used over 70+ times," and that Taylor Swift would not have written "Shake It Off" had he not written "Haters gone hate."  [*Id.* at 1, 4.]  As to Sony/ATV, he claims the company distributed "Shake It Off" globally and achieved more than $50 million in gross sales without acknowledging his contribution, in violation of 17 U.S.C. § 508.  [*Id.* at 6.]

Attached to the Complaint and incorporated by reference are exhibits claiming to reflect a copyright registration for "Haters Gone Hate," a YouTube link to his song, and portions of an article describing the artistry behind "Shake It Off."  [Compl., Ex. A.][2]

Even though Shellback and Big Machine are listed as defendants, the sole cause of action appears to be brought solely against Sony/ATV, Taylor Swift, and Max

---

[2] Although not attached to the Complaint, the Court has listened to, and thus takes judicial notice of, "Shake It Off" by Taylor Swift under Federal Rule of Evidence 201.  Judicial notice is appropriate where "a fact … is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Martin.  Braham seeks $42 million in monetary damages, as well as the addition of his and his publisher's name to future copies for sale.  [Compl.  at 10.]

**GOVERNING STANDARDS**

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss the Complaint (and deny IFP status) if the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief."  *See also Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (*en banc*).  Relevant here is the second of these standards.

"The language of § 1915(e)(2)(B)(ii) parallels the language of Federal Rule of Civil Procedure 12(b)(6)," and so the Court applies the same standard to both.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see, e.g.*, *Rogers v. Giurbino*, No. 13-55527, 2015 WL 5091827, at *1 (9th Cir. Aug. 31, 2015).  Accordingly, the Complaint must be dismissed if it "(1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  Conclusory allegations are insufficient.  *Id.* at 678-79.  Although a complaint need not set forth detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do," and the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

In addition to appropriate factual allegations, a complaint must include fair "notice of the claim such that the opposing party may defend himself or herself

effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). "[A] complaint need not pin plaintiff's claim for relief to a precise legal theory" or include "exposition of his legal argument," so long as it constitutes a "plausible 'short and plain' statement of the plaintiff's claim." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

The Court accepts all facts alleged in a complaint as true and draws all reasonable inferences in favor of the plaintiff. *Gant v. Cnty. of L.A.*, 772 F.3d 608, 614 (9th Cir. 2014). For an allegation to be "entitled to the assumption of truth," it must be well-pleaded, that is, it must set forth a non-conclusory factual allegation rather than a legal conclusion. *Iqbal*, 556 U.S. at 682. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted) (quoted in *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1025 (9th Cir. 2014)). Nevertheless, courts must "continue to construe *pro se* filings liberally when evaluating them under *Iqbal*[.]" *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (*quoting Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)) (internal quotation marks omitted).

If a complaint is to be dismissed, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000); *see Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. June 26, 2015) (internal citations and quotation marks omitted) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"). Leave to amend is not appropriate, even given the liberal pleading standard for *pro se* litigants, when "the pleading 'could not possibly

4

be cured by the allegation of other facts.'" *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (*quoting Lopez v. Smith*, 203 F.3d at 1130, 1131).

## DISCUSSION

### I.  Braham's IFP Application Should Be Denied Because He Fails to State a Claim of Copyright Infringement Under Rule 8.

"To establish a prima facie case of copyright infringement, a plaintiff must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012) (citations and quotation marks omitted). The Court finds that Braham has alleged sufficient facts to satisfy the first element because a copyright registration is "prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410(c).

Turning to the second element, Braham's factual allegations fail to satisfy Rule 8.  Braham does not identify the subject matter that he believes Defendants copied, other than saying that an unidentified "22 word phrase" from his song is repeated in "Shake It Off."  Having reviewing the lyrics of both songs, the Court has been unable to identify a 22-word phrase that constitutes 92% of the lyrics of "Shake It Off" or that is repeated 70 times as Braham alleges.  [Dkt. 1 at 4.]  Thus, Braham has not *plausibly* identified "constituent elements" that he alleges have been copied, and so the factual allegations of the complaint do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  His IFP application must therefore be denied.

## II. If Braham Chooses to Refile, He Should Be Aware That the Court Has Significant Concerns That He Cannot State a Claim of Copyright Infringement under Federal Rule of Civil Procedure 12(b)(6) Based Solely on the Use of Certain Lyrics.

This Court is not a musicological expert.  With that caveat, and notwithstanding the Court's conclusion that the Complaint fails to satisfy Rule 8, the Court detects only two (and maybe three) similarities between "Haters Gone Hate" and "Shake It Off": (1) the use of the lyrical phrase "Haters gone/gonna hate," (2) the use of the lyrical phrase "Players/Playas gone/gonna play", and—straining credulity—(3) some lyrics referring to fakers faking people.[3]  The songs appear to have different melodies and belong to different musical genres.  And, even in the identified potential similarities, "Shake It Off" uses a rhetorical repetition following the phrases.  Assuming Braham may attempt to replead his complaint based on some or all of these identified lyrical "similarities" (and the Court uses that phrase loosely) to overcome his Rule 8 deficiency, the Court explains to Braham the uphill battle he faces in pleading a copyright infringement case based on the lyrics of "Shake It Off" and "Haters Gone Hate".

### A. Braham's Must Plausibly Allege That His Work Is Original.

It is worth noting that, as a general matter, lyrics of a musical work can be protected by copyright—even if the musical accompaniment is not copied.  *See* 1-2 *Nimmer on Copyright* § 2.05 ("Suppose the plaintiff's work includes both music and 'accompanying' words, but the defendant copies only the plaintiff's words, unaccompanied by his music …. [It] remains clear under the present Act, that … the copyright … will protect against unauthorized use of the music alone or of the

---

[3] For the purposes of this opinion, the Court is not drawing distinctions between "player" and "playa" and "gonna" and "gon-e."

6

words alone, or of a combination of music and words.") (*quoted in Marya v. Warner/Chappell Music, Inc.*, 2015 WL 5568497, at *5 (C.D. Cal. Sept. 22, 2015)). As already mentioned, Braham must plead "copying of constituent elements of the work **that are original**." *Range Rd.*, 668 F.3d at 1153 (emphasis added).

From what the Court has seen, it appears unlikely that Braham can satisfy his pleading burden because alleging copying of *something* is not enough. Rather, Braham must allege copying of portions of his work that are protectable. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author.").

Although the recommended denial of IFP status does not rely on these sources, the Court has identified internet sources which, if submitted as admissible evidence, may demonstrate that the lyrics "Haters gone hate" and "Players gone play" are not original components of Braham's 2013 work:

- "Playas Gon' Play," *3LW* (2000) (using phrase "Them playas gon' play, them haters gon' hate" in musical work) (*available at https://www.youtube.com/watch?v=dD9A8x_xn5g*) (last accessed November 6, 2015).

- "Haters Gonna Hate" entry on Urban Dictionary, reflecting use and definition of the phrase since at least August 2010. (*available at http://www.urbandictionary.com/define.php?term=Haters%20Gonna%20 Hate*) (last accessed November 6, 2015)

- "Haters Gonna Hate," *Google Trends* (reflecting use of phrase starting between 2009 and 2011, and peaking between 2011 and 2013, until popular reporting of the commencement of this lawsuit in 2015)

1    (*available at http://www.google.com/trends/explore?hl=en-*
2    *US#q=haters+gonna+hate*) (last accessed November 6, 2015)

3    • "Players Gonna Play," *Google Trends* (reflecting use of phrase starting in
4    2011) (*available at*
5    *http://www.google.com/trends/explore#q=Players%20gonna%20play*)
6    (last accessed November 6, 2015)

7    • *See also http://knowyourmeme.com/memes/haters-gonna-hate* (purporting
8    to describe history, origin, search interest, and etymology of "Haters
9    Gonna Hate," including use in internet memes[4] and animated GIFs[5]
10   throughout 2011, and as early as 2008).

11   With the benefit of the Court's discussion, Braham should consider whether
12   filing a new complaint claiming that his lyrics "Players Gonna Play" and "Haters
13   Gonna Hate" are original would conflict with his duty under Federal Rule of Civil
14   Procedure 11 not to make factually or legally baseless claims.  *See Warren v.*
15   *Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) (holding Rule 11 applies to *pro se*
16   litigants).[6]

17

18   _____

19   [4] A meme is "an idea, behavior, style, or usage that spreads from person to person
20   within a culture."  *Meme*, Merriam-Webster Online Dictionary (*available at*
21   *http://www.merriam-webster.com/dictionary/meme*) (last accessed November 6,
     2015).

22   [5] Broadly speaking, a GIF is "a computer file format for the compression and
23   storage of digital video images."  *GIF*, Merriam-Webster Online Dictionary
24   (*available at http://www.merriam-webster.com/dictionary/GIF*) (last accessed
     November 6, 2015).  In popular culture, GIFs are often used on the internet to
25   convey humorous ideas, much like a meme.

26   [6] This caveat applies with particular force when a *pro se* litigant seeks to proceed
27   IFP. "Rule 11's express goal is deterrence: IFP litigants, proceeding at the expense
     of taxpayers, need to be deterred from filing frivolous lawsuits as much as litigants
28   who can afford to pay their own fees and costs."  *Warren*, 29 F.3d at 1390.

8

**B. Braham Must Plausibly Allege Facts that Could Convince a Court that His Work Bears External Similarity to "Shake It Off."**

The current iteration of the complaint alleges that Taylor Swift would not have written "Shake It Off" but for Braham's work.  It does not include any factual allegations that Swift literally copied his work into her own, and without additional allegations, such a claim would be implausible.  This alone does not doom Braham.  "'Because direct evidence of copying is not available in most cases,' a plaintiff can establish copying by showing (1) that the defendant had access to the plaintiff's work and (2) that the two works are substantially similar."  *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (June 13, 2012) (*quoting Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996)).

In the internet age, alleging access is not terribly difficult.  A plaintiff must allege "a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009).  "Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of either (1) a 'chain of events' linking the plaintiff's work and the defendant's access, or (2) 'widespread dissemination' of the plaintiff's work." *Aeropostale, Inc.*, 676 F.3d at 846-47 (*citing Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 482 (9th Cir. 2000)).  Having furnished a YouTube link to his song, Braham has plausibly pled that Defendants had the opportunity to view his work.

Now, to substantial similarity.  The Ninth Circuit has summarized the substantial similarity test as follows:

> To determine whether two works are substantially similar, we apply a two-part test. The "extrinsic test" is an "objective comparison of specific expressive elements"; it focuses on the "articulable similarities" between the two works.  The "intrinsic test" is a

9

> subjective comparison that focuses on "'whether the
> ordinary, reasonable audience' would find the works
> substantially similar in the 'total concept and feel of the
> works.'"

*Aeropostale, Inc.*, 676 F.3d at 848 (internal citations omitted).  A plaintiff must allege facts that could plausibly satisfy—and to prevail, ultimately satisfy—both the intrinsic and extrinsic tests.  *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010).  The "intrinsic test" is always left to a jury (or a judge, in a bench trial), but the "extrinsic test" may be resolved as a matter of law.  *Id.*

"The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria."  *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004).  The extrinsic test often requires "analytical dissection of a work and expert testimony."  *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000).  "Analytical dissection requires breaking the works down into their constituent elements, and comparing those elements for proof of copying as measured by substantial similarity."  *Swirsky v. Carey*, 376 F.3d at 845 (quotation marks omitted).  "Because the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work."  *Id.*

Braham's duty under Rule 8 to allege sufficient facts to create a plausible case of copyright infringement includes sufficient facts of either direct copying or of substantial similarity—including extrinsic similarity.  Braham's pleading, albeit unclear, seems to rely solely on the use of similar, short phrases that also appear in his work.  Yet even that sole identified similarity may not be so similar: one readily distinguishing feature in "Shake It Off" is the repetition of the last word of the phrases that Braham claims infringe.  For example, "Haters gonna hate" is "Haters gonna hate, hate, hate, hate, hate" and "Players gonna play" is "Players gonna play,

10

1   play, play, play, play."  That repetition is nowhere to be found in "Haters Gone

2   Hate."  If Braham chooses to replead, he should allege sufficient facts that, if taken

3   as true, *plausibly* show objective similarity between the two works.

4   **III.      Braham's Options**

5   The Court notes that the denial of IFP status does not stop Braham from

6   proceeding with his current complaint if he files the appropriate court filing fee, nor

7   does it prohibit him from attempting to file his lawsuit again with a new complaint

8   that remedies the deficiencies mentioned above.

9

10                                    **CONCLUSION**

11   At present, the Court is not saying that Braham can never, ever, ever get his case

12   back in court.  But, for now, we have got problems, and the Court is not sure

13   Braham can solve them.  As currently drafted, the Complaint has a blank space—

14   one that requires Braham to do more than write his name.  And, upon consideration

15   of the Court's explanation in Part II, Braham may discover that mere pleading Band-

16   Aids will not fix the bullet holes in his case.  At least for the moment, Defendants

17   have shaken off this lawsuit.

18

19   **IT IS HEREBY RECOMMENDED.**

20

21   DATED: November 10, 2015      _____

22                                 GAIL J. STANDISH
                                   UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28